In the United States District Court
for the Southern District of Illinois

|  |  |  |
|---|---|---|
| David Kenerley, individually and on behalf of all others similarly situated, | : : : | |
| | : | 03-cv-770 GPM |
| Plaintiff, | : : | |
| -against- | : | **NOT A CLASS ACTION** |
| | : | |
| Templeton Funds, Inc. and Templeton Global Advisors Limited, | : : | |
| | : : | |
| Defendants. | : : | |

Answer of
Templeton Funds, Inc. and
Templeton Global Advisors Limited
to the Complaint

Defendants Templeton Funds, Inc. ("Funds, Inc.") and Templeton Global Advisors Limited ("Global Advisors") answer the Complaint as follows:

Funds, Inc. and Global Advisors deny the allegations in the Complaint about or pertinent to Funds, Inc., Global Advisors and plaintiff David Kenerley unless expressly admitted or otherwise

responded to as follows:

| Para. | Response |
|-------|----------|

1       Deny, except admit that plaintiff purports to bring this action as a class action.

2       Deny.

3       Deny, except admit that the Court has subject matter jurisdiction and supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

4       Deny.

5       Deny knowledge or information sufficient to form a belief as to the truth of the allegations about David Kenerley's residence.

6       Deny, except admit that Funds, Inc. is a Maryland Corporation with its principal place of business in Fort Lauderdale, Florida, and a registrant with the U.S. Securities and Exchange Commission.

7       Deny, except admit that Global Advisors is a Bahamas corporation with its principal place of business in Nassau, Bahamas; that the day-to-day tasks associated with running the business of the Templeton World Fund (the "Fund"), such as investment management, share marketing, distribution, redemption, financial and

2

regulatory reporting and custodianship of funds are contracted out since it has no employees; that Global Advisors is under contract to serve as the investment manager for the Fund, and that Global Advisors selects the Fund's investments.

8       Deny, except deny knowledge or information sufficient to form a belief as to the truth of the allegations about David Kenerley's purported purpose for owning and holding shares of the Fund; and admit on information and belief that David Kenerley has owned and held shares of the Fund.

9       Deny, except admit that the foreign securities purchased by the Fund for its portfolio are traded principally in securities markets outside of the United States.

10      Deny.

11      Deny, except admit that, in general, shares of open end mutual funds are sold to investors at a price based upon the net asset value ("NAV") per share plus any applicable charges; and that those investors may redeem their share(s) at the NAV of the share(s) less any applicable charges.

12      Admit.

3

13      Deny, except admit that sales and redemption prices
        are based upon the NAV which in turn depends, in part,
        upon the fluctuating value of the Fund's underlying
        portfolio of securities; the NAV is recalculated every
        business day; and that the Fund share price (NAV) is
        set once every business day at the close of trading on
        the New York Stock Exchange.

14      Deny, except admit that a significant portion of the
        securities in the Fund are foreign securities; the
        home markets for such foreign securities may include
        London, Paris, Frankfurt, Moscow, Singapore, Kuala
        Lumpur, Hong Kong, Taipei, Tokyo and Sydney; and those
        markets are located in time zones that are
        approximately five hours to fifteen hours ahead of
        Eastern Standard Time.

15      Deny, except deny knowledge or information sufficient
        to form a belief as to the truth of the allegations
        about "[s]tudies of world financial markets"; and
        "correlations between the value of the fund's
        securities and these benchmarks."

16-17   Deny knowledge or information sufficient to form a
        belief as the truth of the allegations.

18      Deny.

19      Deny, except admit on information and belief that the
        securities markets in Australia, Japan, Taiwan, Hong

4

Kong, Malaysia, Singapore, Russia, Germany, France and the United Kingdom have traded for an entire session before the NAV is set for the Fund.

20      Deny, except admit on information and belief that the exchange located in Sydney, Australia observes normal trading hours of 10:00 am to 4:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 4:00 pm local time (often at 2:00 am Eastern time).

21      Deny, except admit on information and belief that the exchange located in Tokyo, Japan observes normal trading hours of 9:00 am to 3:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 3:00 pm local time (often at 2:00 am Eastern time).

22      Deny, except admit on information and belief that the exchange located in Taipei, Taiwan observes normal trading hours of 9:00 am to 1:30 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 1:30 pm local time (often at 1:30 am Eastern time).

23      Deny, except admit on information and belief that the exchange located in Hong Kong observes normal trading

hours of 10:00 am to 4:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 4:00 pm local time (often at 4:00 am Eastern time).

24      Deny, except admit on information and belief that the exchange located in Kuala Lumpur, Malaysia observes normal trading hours of 9:30 am to 5:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 5:00 pm local time (often at 5:00 am Eastern time).

25      Deny, except admit on information and belief that the exchange located in Singapore observes normal trading hours of 9:00 am to 5:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 5:00 pm local time (often at 5:00 am Eastern time).

26      Deny.

27      Deny, except admit on information and belief that the exchange located in Frankfurt, Germany observes normal trading hours of 9:00 am to 8:00 pm local time; and that, in general, active trading of securities traded on this exchange ends, and closing prices for those securities are posted at 8:00 pm local time (often at

6

2:00 pm Eastern time).

28      Deny, except admit on information and belief that the
        exchange located in Paris, France observes normal
        trading hours of 9:00 am to 5:30 pm local time; and
        that, in general, active trading of securities traded
        on this exchange ends, and closing prices for those
        securities are posted at 5:30 pm local time (often at
        11:30 am Eastern time).

29      Deny, except admit on information and belief that the
        exchange located in London, England observes normal
        trading hours of 8:00 am to 4:30 pm local time; and
        that, in general, active trading of securities traded
        on this exchange ends, and closing prices for those
        securities are posted at 4:30 pm local time (often at
        11:30 am Eastern time).

30      Deny, except admit that a portion of the underlying
        securities of the Fund are listed on foreign exchanges
        and trade during each market's respective session.

31      Deny, except deny knowledge or information sufficient
        to form a belief as to the truth of the allegations
        about what the "market timing strategy stems from";
        what "[m]arket timing traders are able to predict";
        and the "stale price strategy of market timers".

32-35   Deny.

36      Deny, except admit that cash held by the Fund is one
        of the assets that is valued in setting its NAV; and
        assert that any such purported injury suffered by the
        shareholders would be derivative of, and not separate
        or distinct from, any such injury to the Fund.

37      Deny.

38      Deny, except deny knowledge or information sufficient
        to form a belief as to the truth of the allegations
        about what "market timers" consider "an attractive low
        risk trading vehicle".

39      Deny, except admit that plaintiff purports to bring
        this action as a class action.

40-45   Deny.

46      Repeat and reallege their responses to the paragraphs
        incorporated by reference therein.

47      Deny, except respectfully refer to the prospectus for
        a correct statement of its contents.

48      Deny, except decline to respond to matters of law
        (particularly   what   the   Board   of   Directors   is
        "required" to review and approve); and admit that
        Global Advisors serves as the investment manager of
        the Fund; provides portfolio management services to

and selects the securities for the Fund to buy, hold or sell; and further assert that Global Advisors receives fees based on the percentage of assets under management for managing the Fund's assets.

49      Deny, except admit on information and belief that David Kenerley has owned shares of the Fund.

50      Deny, except assert that Global Advisors in its role as investment manager of the Fund used the skill and care ordinarily used by reasonably well-qualified members of their profession.

51-52   Decline to respond to matters of law.

53-54   Deny.

55      Repeat and reallege their responses to the paragraphs incorporated by reference therein.

56      Decline to respond to matters of law.

57-58   Deny.

59      Repeat and reallege their responses to the paragraphs incorporated by reference therein.

60      Decline to respond to matters of law.

61-63   Deny.

9

## First Affirmative Defense

The Complaint fails to state a claim against Funds, Inc. and Global Advisors upon which relief may be granted.

## Second Affirmative Defense

The claims asserted in the Complaint are derivative claims, not class claims, and this action is not properly brought as a class action.

## Third Affirmative Defense

The Complaint, which asserts solely derivative claims, fails to allege the efforts, if any, made to make demand on the Fund's Board of Directors to take the actions plaintiff Kenerley desires and the reasons for his failure to obtain the action or for not making the effort, as required under both Rule 23.1, Fed.R.Civ.P., and Maryland law.

## Fourth Affirmative Defense

The claims asserted by plaintiff Kenerley relate to the pricing of portfolio securities of the Fund.  This entire matter is the subject of a complex, nationwide regulatory scheme administered by the U.S. Securities and Exchange Commission through rules, regulations and regular audits and is not a matter appropriately before this (or any other) Court.

## Fifth Affirmative Defense

The Complaint fails to allege any legally cognizable theory of damages.

## Sixth Affirmative Defense

The claims against Funds, Inc. and Global Advisors are barred in whole or in part by the applicable statutes of limitation.

## Seventh Affirmative Defense

The claims asserted by plaintiff Kenerley are barred by the doctrines of waiver, estoppel and ratification.

## Eighth Affirmative Defense

There is no implied right of action under § 36(a) of the Investment Company Act of 1940.

## Ninth Affirmative Defense

An action under § 36(a) may not be brought against Funds, Inc. because it does not serve or act as an "officer, director, member of any advisory board, investment advisor ... depositor ... or principal underwriter" to the Fund.

11

JURY DEMAND

Defendants hereby demand a trial by jury of the claims in this action.

Wherefore, Funds, Inc. and Global Advisors demand judgment dismissing the Complaint and awarding them their costs, attorneys' fees and such other and further relief as this Court deems just and proper.

Dated:    January 28, 2004

Pollack & Kaminsky

s/Daniel A. Pollack

by:_____

Daniel A. Pollack
Martin I. Kaminsky
Edward T. McDermott
Anthony Zaccaria

114 West 47th Street
New York, New York 10036
Tel.:   (212) 575-4700
Tax:    (212) 575-6560

-and-

Armstrong Teasdale LLP

s/Frank N. Gundlach

by:_____

Frank N. Gundlach

One Metropolitan Square
Suite 2600
St. Louis, Missouri 63102
Tel.:   (314) 621-5070
Fax:    (314) 621-5065

12

*Attorneys for Defendants*
*Templeton Funds, Inc. and*
*Templeton Global Advisors*
*Limited*

**<u>Certificate of Service</u>**

A copy of the foregoing was mailed, postage prepaid, this 28th day of January, 2004, to the following:

Stephen M. Tillery
Korein Tillery
10 Executive Woods Court
Swansea, Illinois  62226

George A. Zelcs
Korein Tillery
Three First National Plaza
70 West Madison, Suite 660
Chicago, Illinois  60602

Eugene Barash
Korein Tillery
701 Market Street
St. Louis, Missouri  63101

Andrew S. Friedman
Francis J. Balint, Jr.
Bonnett, Fairbourn, Friedman
  & Balint, P.C.
2901 N. Central Ave., Ste. 1000
Phoenix, Arizona  85012

***Attorneys for Plaintiff
and the Class***

